# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Records and information associated with the cellular telephone assigned call number 414-736-8421, (T-Mobile) more fully described in Attachment A.

Case No. 19-MJ-1315

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. §§ 2113(a) and (d); 18 U.S.C. § 924(c)(1)(A)(ii); 18 U.S.C. § 1951(a); and 18 U.S.C. §§ 922(g)(1) and 924(e).

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Daniel Gartland, FBI
*Printed Name and Title*

Sworn to before me and signed in my presence:
Date: 9/24/19

_____
Judge's signature

City and State: Milwaukee, Wisconsin      Honorable William E. Duffin, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Daniel Gartland, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(414) 736-8421**, which is stored at premises controlled by T-Mobile US, Inc. (T-Mobile), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ, 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I, Daniel Gartland, am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May 2018. Since October 2018, I have been assigned to FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies and other violent crime matters, defined under Title 18 of the United States Code.

3. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, interviews, and

debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 2113(a) and (d) (armed bank robbery); Title 18, United States Code, Section 924(c)(1)(A)(ii) (use of a firearm during a crime of violence); Title 18, United States Code, Section 1951(a) (Hobbs Act robbery); and Title 18, United States Code, Sections 922(g)(1) (unlawful possession of a firearm by a prohibited person) have been committed by Rickey Austin (DOB xx/xx/1955). There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as described in Attachment B.

## PROBABLE CAUSE

7. On December 3, 2018, an unidentified male subject (UNSUB#1) committed an armed robbery of the BMO Harris Bank, 7501 West North Avenue, Wauwatosa, WI, 53213. UNSUB#1 entered the bank at approximately 4:17 p.m. through the South entrance of the building. UNSUB#1 approached a teller at the counter and brandished two semi-automatic handguns, one silver, one black. UNSUB#1 pointed a handgun at the teller and demanded the

2

teller and two other tellers place money from the drawer in a black drawstring bag. UNSUB#1 then exited the bank with approximately $8,399.00 in U.S. currency.

8. UNSUB#1 was described as a black male, with a trimmed beard, 30 to 40 years of age and approximately 5'8" in height. The subject was wearing a large black hooded jacket with the hood up, sunglasses, dark colored gloves, black pants, and dark colored tennis shoes.

9. On January 2, 2019, an unidentified male subject (UNSUB#2) committed an armed robbery of Steve's Liquor, 6213 West Appleton Avenue, Milwaukee, WI, 53210. UNSUB#2 entered the store via the Chambers Street entrance at approximately 7:10 p.m. UNSUB#2 approached the cashier and brandished two semi-automatic handguns, one silver, one black. UNSUB#2 demanded the cashier place money from the register in a pillow case. The cashier gave money from the register directly to UNSUB#2. UNSUB#2 exited the store with approximately $454.00 in U.S. Currency, leaving the pillow case on the counter. UNSUB#2 returned shortly after exiting the store to retrieve the pillowcase, but the door was locked and employees would not let UNSUB#2 re-enter the store.

10. UNSUB#2 was described as a black male, with a partially colored-in trimmed beard, 40 to 50 years of age, approximately 5'4" in height with a medium build. The subject was wearing a black hooded "Gerry" brand jacket with the hood up and a baseball hat underneath, a button down shirt with checked pattern, aviator style sunglasses, black gloves, blue jeans with a stain on the right leg, and dark-colored tennis shoes.

11. On January 15, 2019, an unidentified male subject (UNSUB#3) committed an armed robbery of Chase Bank, 8737 North Port Washington Road, Fox Point, WI, 53217. UNSUB#3 entered the bank at approximately 4:50 p.m., approached a teller and produced two semi-automatic handguns, one silver, one black. UNSUB#3 demanded money from the teller be

3

placed in a black plastic bag. The teller produced money from a teller-operated cash-dispensing machine. UNSUB#3 took the money and exited the bank with approximately $4,100.00 in U.S. currency.

12. UNSUB#3 was described as a black male, 30 to 50 years of age, approximately 5'6" in height. The subject was wearing a black hooded "Gerry" brand jacket with the hood up and a baseball hat underneath, a button down shirt with checkered pattern, dark sunglasses, dark gloves, blue jeans, and dark-colored tennis shoes.

13. Surveillance video obtained from a Milwaukee County Transit System (MCTS) bus traveling northbound on North Port Washington Road around 4:40 p.m. on January 15, 2019, captures a tan Jeep Commander, bearing Wisconsin plates AEH 5724, turn in the direction of the Audubon Court Shopping Center ("Audubon") located at 383 West Brown Deer Road, Fox Point, WI. While stopped on North Port Washington Road, surveillance video from the same MCTS bus captured an individual crossing North Port Washington Road from Audubon in the direction of Chase Bank, immediately before the robbery. The MCTS bus surveillance video then captures an individual crossing from the direction of Chase Bank to Audubon, immediately after the robbery. A short time after the individual is walking towards the Audubon, a tan Jeep Commander is captured on the same MCTS bus video turning northbound onto North Port Washington Road away from police vehicles responding to the robbery. The tan Jeep Commander then performed a U-turn and headed south on North Port Washington Road.

14. The tan Jeep Commander bearing Wisconsin plates AEH 5724 is registered to Rickey Austin of 2861 North 37th Street, Lower, Milwaukee, WI.

4

15. On February 1, 2019, audiovisual footage of the Steve's Liquor robbery was shown to Rickey Austin's probation officer, K.B. K.B. identified Rickey Austin as the robber based on his voice. K.B. advised that Austin's cellular phone number is **(414) 736-8421.**

16. On February 6, 2019, a search warrant was executed on the residence of Rickey Austin, including accessible common areas. Items recovered from the residence included a black hooded "Gerry" brand jacket, a black Hi-Point 9MM handgun, a silver Interarms 40 caliber handgun and two cellular telephones. The handguns were found together wrapped inside a black plastic bag. The jacket and cellular phones were recovered inside a room containing Austin's identifying documents. A tan Jeep bearing Wisconsin registration AEH-5724 was parked in the rear parking slab. Among other items collected from the Jeep was a black hooded zip-up sweatshirt and black gloves.

17. On February 5, 2019, law enforcement spoke with coworkers of Austin's at the Residence Inn on North Port Washington Road in Glendale. At least two of Austin's coworkers were able to identify Austin by his appearance and voice on the surveillance video taken during the Steve's Liquor and Chase robberies.

18. Investigators believe UNSUB#1, UNSUB#2 and UNSUB#3 (together, "UNSUBS") of the aforementioned robberies are the same individual because the mannerisms and modus operandi are similar. The clothing worn by UNSUB#2 and UNSUB#3 included a baseball hat, a button down shirt with a checkered pattern, and blue jeans. The clothing worn by UNSUBS included a black hooded jacket, sunglasses, dark-colored gloves, and dark-colored shoes. The clothing has a similar fit on UNSUBS. Investigators have viewed surveillance still photographs from each robbery and believe the UNSUBS to be the same person. In addition,

5

witness statements from the aforementioned robberies provide age and height descriptions that are inclusive of one individual.

19. On February 26, 2019, a federal grand jury in the Eastern District of Wisconsin returned an indictment against Rickey Austin for violations of Title 18, United States Code, Section 2113(a) and (d) (armed bank robbery); Title 18, United States Code, Section 924(c)(1)(A)(ii) (use of a firearm during a crime of violence); Title 18, United States Code, Section 1951(a) (Hobbs Act robbery); and Title 18, United States Code, Sections 922(g)(1) and 924(e) (unlawful possession of a firearm by a prohibited person).

20. One of the cellular phones seized from Austin's room was forensically examined after a warrant was obtained. The SIM card was determined to be assigned the cellular phone number **(414) 736-8421**. The service provider for the telephone was AT&T Wireless.

21. Subscriber information from AT&T Wireless indicates Rickey Austin established service with the provider on January 7, 2019. A law enforcement database identifies T-Mobile as the service provider for **(414) 736-8421** prior to January 7, 2019.

22. I submit that there is probable cause to believe that the records identified in Attachment B, which correspond to cellular telephone number **(414) 736-8421**, are likely to constitute evidence of the above-described armed robberies. According to law enforcement databases, T-Mobile was the Provider for these telephone numbers during the time period at issue.

23. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site

6

data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

24. Based on my training and experience, I know that T-Mobile can collect cell-site data about the cellular telephones using their network, including **(414) 736-8421**. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. From this data, wireless providers such as T-Mobile can also estimate the historical location of a cellular phone using their network.

25. Based on my training and experience, I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the methods of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and

7

experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the cellular telephones' user or users. The phone records requested in this application likely contain evidence of the locations of the cellular telephone assigned call number **(414) 736-8421** relative to the BMO Harris bank, Steve's Liquor, and Chase Bank immediately before, during, and after the crimes charged. The requested records also likely contain evidence of the identity, ownership, and custody of the cellular telephone assigned call number **(414) 736-8421**.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

8

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(414) 736-8421** ("the Account"), that are stored at premises controlled by T-Mobile US, Inc. ("the Provider"), headquartered at Custodian of Records, 4 Sylvan Way, Parsippany, NJ, 07054.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **December 1, 2018 through December 5, 2018 and December 31, 2018 through January 4, 2019:**

    a.    The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Dates of birth;

        iv. Alternate phone numbers;

        v. Other phone numbers on the same Account;

        vi. Local and long distance telephone connection records;

        vii. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        viii. Length of service (including start date) and types of service utilized;

        ix. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

    Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
   x. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
   xi. Means and source of payment for such service (including any credit card or bank account number) and billing records.

 b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, including the locations of any cell tower and antenna face; and

   iii. historical location records (including Estimated Location records, geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, per-call measurement data (PCMD), historical E911 data, or precision measurement information).

 c. A list of definitions identifying all information contained in the records.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 2113(a) and (d) (armed bank robbery); Title 18, United States Code, Section 924(c)(1)(A)(ii) (use of a firearm during a crime of violence); Title 18, United States Code, Section 1951(a) (Hobbs Act robbery); and Title 18, United States Code, Sections 922(g)(1) and 924(e) (unlawful possession of a firearm by a prohibited person) during the period **December 1, 2018 through December 5, 2018 and December 31, 2018 through January 4, 2019.**

2

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Sprint, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Sprint. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Sprint, and they were made by Sprint as a regular practice; and

    b.    such records were generated by Sprint's electronic process or system that produces an accurate result, to wit:

        1.    The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Sprint in a manner to ensure that they are true duplicates of the original records; and

        2.    The process or system is regularly verified by Sprint, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____  _____
Date                                      Signature